1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANSSEN CONDOMINIUM
ASSOCIATION OF APARTMENT
OWNERS,

                              Plaintiff,

        v.

COUNTRY MUTUAL INSURANCE
COMPANY, FARMINGTON CASUALTY
COMPANY, THE TRAVELERS
INDEMNITY COMPANY, THE
TRAVELERS INDEMNITY COMPANY
OF AMERICA, and TRAVELERS
CASUALTY INSURANCE COMPANY OF
AMERICA,

                              Defendants.

No.  2:21-cv-00295-BJR

ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT, DENYING
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT,
AND DENYING TRAVELERS'
MOTION TO EXCLUDE

## I.      **INTRODUCTION**

This lawsuit arises from an insurance coverage dispute between Plaintiff Franssen

Condominium Association of Apartment Owners ("Plaintiff" or the "Association") and

Defendants Travelers Casualty Insurance Company of America, The Travelers Indemnity

Company of America, The Travelers Indemnity Company, Farmington Casualty Company

(collectively, "Travelers"), and Country Mutual Insurance Company ("Country Mutual," and

together with Travelers, hereinafter referred to as "Defendants").  Presently before the Court are

cross-motions for partial summary judgment filed by the parties.  Plaintiff moves for partial

ORDER - 1

summary judgment on part of its claim for declaratory relief (Dkt. 44 ("Pl. Mot.")), and Travelers and Country Mutual separately move for partial summary judgment on Plaintiff's claim for breach of contract.  Dkt. 62 ("Country Mutual Mot."); Dkt. 64 ("Travelers Mot.").  Also before the Court is Travelers' motion to exclude the testimony of Jens Johanson.  Dkt. 69 ("Motion to Exclude" or "MtE").  Having reviewed the motions, the record of the case, and the relevant legal authorities, the Court GRANTS Plaintiff's motion for partial summary judgment, DENIES Travelers' and Country Mutual's motions for partial summary judgment, and DENIES Travelers' Motion to Exclude.  The reasoning for the Court's decision follows.

## II.   **BACKGROUND**

### A.   **Factual Background**

Plaintiff is an association of homeowners at a condominium on Whidbey Island in Oak Harbor, Washington (the "Condominium").   The Condominium consists of two three-story buildings, both of which were constructed in 1984.  The buildings have a wood-frame exterior that is clad with stucco over various building materials.

### 1.   **The Travelers Policies**

Travelers sold the Association five property insurance policies (the "Travelers Policies") that were collectively in effect from February 7, 1995 to February 7, 2003.  Declaration of Dean Aliberti ("Aliberti Decl.," Dkt. 52), Exs. A-E.  Each of those policies cover loss or damage either "commencing" or "occurring" during their respective effective periods.[1]   In addition, coverage under each of those policies is subject to a deductible: $500 per occurrence for the first policy period, and $1,000 per occurrence for the remaining periods.  *E.g.*, *id.*, Ex. A at 3; *id.*, Ex. E at 7.

---

[1] Specifically, the policies effective between February 1995 to February 1999 cover loss or damage "commencing" during the policy period, and the policies effective between February 1999 to February 2003 cover loss or damage "occurring" during the policy period.  *E.g.*, Aliberti Decl., Ex. A at 29-30; *id.*, Ex. E at 32.

ORDER - 2

### 2.    The Country Mutual Policies

Country Mutual sold the Association seven consecutive property insurance policies (the "Country Mutual Policies") that were collectively in effect from February 7, 2013 to February 7, 2019.  Declaration of Todd Hayes ("Hayes Decl.," Dkt. 46), Ex. C.  Those policies are set forth in a "Business Coverage Form" as modified by, among other things, a "Washington Changes" endorsement.  *Id.*  Each of those policies cover loss and damage "commencing" during their respective policy periods.  Declaration of Daniel Syhre (Dkt. 54), Ex. A.

### 3.    The Association's Insurance Claims

In December 2019, the Association retained a general contractor, J2 Building Consultants ("J2"), to inspect the Condominium for purposes of replacing certain windows.  In the process of performing that inspection, J2 discovered various damage to the buildings' exterior that J2 assessed had been caused by wind-driven rain.  Based on J2's initial assessment, the Association requested that Travelers "investigate, identify, and repair any [] covered hidden water damage." Dkt. 65-6.  In response, an investigation of the Condominium was jointly performed in April 2020 by J2 and consultants representing Travelers and Country Mutual.  That investigation, which involved the creation and inspection of 13 openings in the buildings' exterior, resulted in competing investigation reports issued by J2 and Defendants' consultants.  J2's report concluded that wind-driven rain had intruded into the buildings' stucco-clad exterior through construction defects and other pathways, causing ongoing damage – to the exterior's framing, sheathing, and other underlying building components – beginning when the buildings were first erected. Declaration of Daniel Bentson ("Bentson Decl.," Dkt. 67), Ex. G ("J2 Report").  Based on Defendants' consultants' reports, however, Travelers and Country Mutual separately notified the

ORDER - 3

Association that they were declining coverage for the cost of repairing the damage.  Aliberti Decl., Ex. H; Declaration of Daniel Houser (Dkt. 59), Ex. A.

**B.    Procedural History**

Plaintiff filed this lawsuit on March 5, 2021.  Dkt. 1.  In its Second Amended Complaint, Plaintiff asserts claims for (1) declaratory relief, (2) breach of contract, (3) insurance bad faith, (4) violations of Washington's Consumer Protection Act, (5) negligence, and (6) violations of Washington's Insurance Fair Conduct Act.  Second Amended Complaint ("SAC," Dkt. 30).  On June 13, 2022, Plaintiff filed a motion for partial summary judgment on its claim for declaratory relief, seeking several legal rulings as to the interpretation of Travelers' and Country Mutual's policies.  Travelers and Country Mutual filed separate briefs opposing the Motion (Dkt. 48 ("Travelers Opp."); Dkt. 53 ("Country Mutual Opp.")), and Plaintiff replied (Dkt 58 ("Pl. Rep.")).

On August 16, 2022, Travelers and Country Mutual separately filed motions for partial summary judgment on Plaintiff's claim for breach of contract.  Travelers also filed a motion to exclude the testimony of Jens Johanson, Plaintiff's expert on the damage allegedly suffered by the Condominium.  Plaintiff opposed those three motions in a single brief (Dkt. 70 ("Pl. Opp.")), and Travelers and Country Mutual filed separate replies (Dkts. 75-76).

## III.    STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'"  *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)).  "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each

claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 657 (9th Cir. 2020).  "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion."  *Id.*  If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986) (citations and quotation marks omitted).

## IV.    DISCUSSION

### A.    Defendants' Motion for Partial Summary Judgment

Travelers and Country Mutual separately seek summary judgment on Plaintiff's claim for breach of contract, which is premised on Defendants' failure to "investigate and pay for the cost of any work required to identify and repair any covered damage" under their respective policies. SAC ¶¶ 6.1-6.5.  Both Travelers and Country Mutual argue that the claim fails because Plaintiff does not present evidence demonstrating that any of the damage for which it seeks recovery commenced or occurred during those policies' effective periods.

### 1.    Travelers' Motion to Exclude Johanson's Opinions

Before reviewing Defendants' summary judgment motions, the Court considers Travelers' motion to exclude the testimony of Jens Johanson concerning the timing of damage to the Condominium.  Travelers contends that Johanson's opinions should be excluded on the ground that they are unreliable.

During discovery, Plaintiff disclosed the J2 Report as its expert report on the alleged damage to the Condominium.  As noted above, the J2 Report concludes that the damage to the buildings' exterior was caused by water intrusion resulting from wind-driven rain, and had been occurring since the buildings' construction in 1984.  *See, e.g.*, J2 Report at 12.  In arriving at that

conclusion, the J2 Report engages in a fairly technical analysis of historical weather data; certain articles on wind-driven rain studies and experiments; and various theoretical diagrams and charts plotting the relationship among numerous variables relevant to the "wind-driven rain events" (*e.g.*, wind speed, wind direction, rain intensity, and building elevation) that would have affected the Condominium.  *See* J2 Report at 5-14.

Plaintiff, in opposing Defendants' motions, does not proffer the J2 Report.  Plaintiff instead proffers a declaration from Jens Johanson, one of J2's principals who was involved in the April 2020 investigation.  *See* Declaration of Jens Johanson ("Johanson Decl.," Dkt. 71).  Johanson opines that construction defects – which he describes as "essentially 'holes' in the Condominium's building envelope" – allowed water from rain and other weather conditions to intrude behind the buildings' cladding, "likely caus[ing] some new damage each year since soon after original construction, and at least since 1995." *Id.* ¶¶ 6-7.[2]  Johanson expressly states that his opinions "do not depend" on the studies, experiments, and technical analyses contained in the J2 Report, and he moreover declares that he is unaware of any scientific papers "concerning how to determine whether weather-related water damage to a building was occurring during a particular year in the past." *Id.* ¶¶ 8-9.  Instead, Johanson states that his opinions are based on his "education, training, and experience as a building envelope consultant and a review of weather data." *Id.* ¶ 8; *see also id.* ¶ 7 (noting his "personal observation" that "it was at times rainy and windy in the Puget Sound area during every year since 1984").  Likewise, Plaintiff states that "Johanson will testify at trial based on his education, training, and experience as a building envelope consultant, not on any scientific literature, methodology, or experiments."  Pl. Opp. at 16.

---

[2] In a separate declaration submitted by Johanson in support of Plaintiff's summary judgment motion, he opines that "[t]he Condominium has been suffering from progressive and incremental damage that was ongoing" over several decades.  Dkt. 45 ¶ 5.

ORDER - 6

Under *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993), the court must act as a "gatekeeper" to ensure that expert testimony is reliable before admitting it. "The gatekeeping function applies to all expert testimony, not just testimony based on the hard sciences." *Nelson v. Thurston Cnty*., No. 18-cv-5184, 2022 WL 4598474, at *1 (W.D. Wash. Sept. 30, 2022) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). On summary judgment, "the court is 'both authorized and obligated to scrutinize carefully the reasoning and methodology underlying the affidavits' that an expert offers." *Houle v. Jubilee Fisheries, Inc*., No. 04-cv-2346, 2006 WL 27204, at *5 (W.D. Wash. Jan. 5, 2006) (quoting *Claar v. Burlington N. R. Co*., 29 F.3d 499, 501 (9th Cir. 1994)). "It is the proponent of the expert who has the burden of proving admissibility." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citation omitted).

The parties dispute, as an initial matter, whether the list of factors set forth in *Daubert* for assessing an opinion's reliability – peer review, error rate, etc. – apply to Johanson's opinions. *See* MtE at 3-6; Pl. Opp. at 17. The Court agrees with Plaintiff that they do not. The Ninth Circuit has recognized that the reliability factors in *Daubert* "do not apply to non-scientific expert testimony, the reliability of which depends on the expert's knowledge and experience more than the expert's methodology or theory." *Johnson v. Kelly*, No. 16-cv-0635, 2017 WL 1838140, at *4 (W.D. Wash. May 8, 2017) (citing *Hangarter v. Provident Life & Acc. Ins. Co*., 373 F.3d 998, 1017 (9th Cir. 2004)); *see Kumho Tire*, 526 U.S. at 151 ("[*Daubert*'s] list of factors was meant to be helpful, not definitive," and "do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged."). As noted above, Johanson's opinions expressly disclaim reliance on the J2's Report's scientific and technical theories, and instead rely solely on his education, experience, and training as a contractor and building envelope consultant. *See* Johanson Decl. ¶¶ 7-8. The *Daubert* factors "are not applicable to this kind of testimony, whose reliability

depends heavily on the knowledge and experience of the expert rather than the methodology or theory behind it." *Hangarter*, 373 F.3d at 1017.  Therefore, absent application of the *Daubert* factors, the Court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (emphasis in original).

The Court finds that Johanson's opinions as to the timing of damage are sufficiently reliable to be admissible.  Travelers does not contend that Johanson's credentials or experience are insufficient to qualify him as an expert.  Indeed, Johanson's experience – comprising over 30 years as a general contractor, and hundreds of projects assessing and developing repairs to weather-related damage to buildings – is notable.  *See* Johanson Decl. ¶ 2, Ex. A.  Travelers, instead, argues that Johanson fails to "connect the dots between his experience and opinions," and that Johanson cannot opine on the timing of damage without a "detailed knowledge of the Condominiums' history."  Tr. Mot. at 5-6.  While Johanson's declaration does not provide the fullest explanation as to how he arrived at his opinions, his analysis – and experience supporting that analysis – is sufficiently apparent to permit this Court to "connect the dots."  Johanson opines that the exterior of the Condominium was improperly constructed in 1984 such that holes were left in the buildings' envelope that would allow water from rain and other weather conditions to intrude behind the buildings' cladding.  Johanson Decl. ¶ 6.  Travelers cannot reasonably dispute that Johanson's credentials and extensive experience (*see id*. ¶ 2) would permit him to identify the construction defects at issue and their expected effects.  Johanson further opines that the construction defects and subsequent water intrusion would cause damage to materials in the buildings' exterior (*e.g.*, framing and sheathing) soon after construction in 1984, and would continue causing new damage

ORDER - 8

during the relevant policy periods.  *Id.* ¶¶ 6-7.  While Johanson's declaration does not expressly state that his experience and training permits such an assessment, the implication is obvious.[3]

Moreover, Travelers' argument that Johanson's lack of a "detailed" history of the Condominium precludes his ability to opine on the timing of damage lacks merit.  In making its argument, Travelers points to the opinion of its civil engineering expert, Donald Bender, that "it is impossible to reach any conclusions with a reasonable scientific certainty" as to moisture intrusion and damage "at any point in time" without "detailed data" on the building envelope's condition and "all potential sources of moisture loading."  Declaration of Donald Bender (Dkt. 66), Ex. A at 8-9.  Travelers demands more of Johanson than is required to demonstrate the reliability of his opinions.  "Expert opinions must be based on facts which enable the expert to express a reasonably accurate conclusion as opposed to speculation, but absolute certainty is not required."  *Barnes v. Cont'l Tire N. Am. Inc.*, No. 05-cv-5214, 2006 WL 2076561, at *1 (W.D. Wash. July 24, 2006); *see Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Lack of certainty is not, for a qualified expert, the same thing as guesswork.").  Here, Johanson does not purport to identify the exact dates damage occurred and the exact sources of moisture causing each new damage.  Rather, as discussed above, his declaration is limited to an opinion that some new damage occurred at some point each year since the buildings' construction.  The Court finds that Johanson's identification of holes in the building's envelope caused by construction defects (a fact neither Travelers nor Bender disputes), his detailed inspection of the building's exterior (*see* J2 Report at 15-44), and the easily identifiable sources of water beginning in 1984 (*e.g.*, rain) provide

---

[3] Travelers points out that Johanson lacks a background in meteorology (*see, e.g.*, Tr. Mot. at 12), but such background is unnecessary for Johanson to premise his opinions on the fact that the Condominium faced regular rain since its construction.

ORDER - 9

Johanson with sufficient facts to permit him "to express a reasonably accurate conclusion as opposed to speculation" concerning the timing of damage. *See Barnes*, 2006 WL 2076561, at *1.[4]

Accordingly, the Court finds that Plaintiff has satisfied its burden of demonstrating that Johanson's opinions are sufficiently reliable to be admissible.[5]   The Court therefore denies Travelers' motion to exclude his testimony.

> ### 2.   Whether Plaintiff Proffers Sufficient Evidence of Damage During the Policy Periods

Having denied Travelers' Motion to Exclude, the Court will proceed to review whether Plaintiff has presented sufficient evidence of damage during the relevant policies' effective periods to survive summary judgement on its breach of contract claim.   As noted above, Defendants contend that Plaintiff fails to demonstrate that any damage to the Condominium commenced or occurred between February 7, 1995 and February 7, 2003 – as necessary to trigger coverage under the Travelers Policies – or between February 7, 2013 and February 7, 2019 – as necessary to trigger

---

[4] Travelers relies heavily on a recent decision, *Gold Creek Condo.-Phase I Ass'n of Apartments Owners v. State Farm Fire & Cas. Co.*, No. 20-5690, 2022 WL 2398424 (W.D. Wash. July 1, 2022), in which a court in this District excluded, as speculative, an architect's opinion that wind-driven rain had damaged buildings' exterior during the policy periods at issue.   There, the expert had relied on a theoretical wind-driven rain analysis similar to the one in the J2 Report in opining that, despite the buildings having been well constructed, "significant storm events" caused water to intrude through tiny cracks in walls.   *See* Bentson Decl., Ex. E-F.   It is a different situation here.   Not only does Johanson disclaim the J2 report's theoretical wind-driven rain analysis, the basis for his opinion – that hole-like defects allowed water from ordinary rain to intrude and cause progressive damage – is sturdier than in *Gold Creek*.

[5] Travelers suggests in passing that Johanson's declaration does not comply with Rule 26 of the Federal Rules of Civil Procedure because Plaintiff never disclosed, in discovery, that Johanson's experience and training were the basis for his opinions.   *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (parties must disclose "a complete statement of all opinions the witness will express and the basis and reasons for them").   While Plaintiff may have violated Rule 26, the Court finds that such violation is harmless and does not warrant excluding Johanson's opinions.   *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness … *unless the failure was substantially justified or is harmless.*" (emphasis added)).   Travelers makes no showing that the belated disclosure was prejudicial, disrupted court proceedings, or was done in bad faith.   *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (identifying factors for determining whether discovery violation is harmless).   Indeed, Johanson's deposition transcript reflects that Travelers had the opportunity to question him about his experience.   *See* Johanson Dep. Tr. at 75:9-19, 79:7-13.

coverage under the Country Mutual Policies.  *See, e.g.*, Travelers Mot. at 8; Country Mutual Mot. at 6.

The parties dispute, as an initial matter, which party holds the burden of proof on this issue. Plaintiff, arguing that Defendants bear that burden, points to the two-step process Washington courts use in determining whether an insurance policy affords coverage: "First, the insured bears the burden of showing that the loss falls within the scope of the policy's insuring agreement.  If it does, the insurer bears the burden of showing that specific policy language excludes the loss in order to avoid coverage."  *Whitney Equip. Co., Inc. v. Travelers Cas. & Sur. Co. of Am*., 431 F. Supp. 3d 1223, 1226 (W.D. Wash. 2020) (citations omitted).  According to Plaintiff, given that the policies' provisions restricting coverage to damage "commencing" or "occurring" during the effective periods are set forth in "conditions" sections (*see supra* at 2-3), they should be reviewed as part of the second step of the two-step process.  *See* Pl. Opp. at 9-12.  As such, Plaintiff contends, it is Defendants' burden to prove that damage commenced or occurred outside of the respective policy periods.  *See id*.

Plaintiff's argument is legally unsupported.  Washington law is clear that "[t]he party asserting coverage bears the burden of proving the loss is a covered occurrence within the policy period."  *Gold Creek Condo.-Phase I Ass'n of Apartments Owners v. State Farm Fire & Cas. Co*., No. 20-5690, 2022 WL 2398395, at *7 (W.D. Wash. July 1, 2022) (quoting *Walla Walla Coll. v. Ohio Cas. Ins. Co*., 149 Wn. App. 726, 730 (Wn. Ct. App. 2009)).  Consistent with that burden, Washington courts require insureds to "identify instances of new damage during [the] policy period to trigger coverage."  *Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am*., No. 16-cv-1012, 2017 WL 5499809, at *5 (W.D. Wash. Nov. 16, 2017); *see Victorian Condo. Owners Ass'n v. Fireman's Fund Ins. Co.*, No. 11-cv-1002, 2012 WL 13028242, at *2 (W.D. Wash. Oct. 2, 2012)

ORDER - 11

(noting that insured "ha[d] the burden at trial of proving that [damage] caused by hidden decay commenced during the coverage period").  It is therefore Plaintiff that bears the burden of proving that damage commenced or occurred during the relevant policy periods.

While Plaintiff holds the burden of proof on this issue, Plaintiff need not demonstrate that weather-related damage first began during the policy periods at issue.  Rather, as Plaintiff points out – and Defendants do not dispute – in the absence of any language in the policy documents defining the terms "commencing" or "occurring," Plaintiff need only demonstrate that water intrusion caused new damage to the Condominium's exterior during those periods.  *See* Pl. Opp. at 12-15.  Washington courts have held, in similar cases involving damage caused by water intrusion into buildings' exteriors, that those terms may be interpreted to encompass each new "progressive and incremental" damage within a series a weather-related damage.  *See Eagle Harbour Condo. Ass'n v. Allstate Ins. Co.*, No. 15-cv-5312, 2017 WL 1316936, at *6 n.2 (W.D. Wash. Apr. 10, 2017) (finding that each storm event that created new water-related damage could constitute damage "commencing" or "occurring" during the policy period); *Sunwood*, 2017 WL 5499809, at *5 (accepting argument that "commencing" encompassed "each instance of new damage or loss in a series of multiple events of loss or damage").

The Court finds that Plaintiff has presented sufficient evidence of new damage during the Travelers Policies' and Country Mutual Policies' effective periods as necessary to survive summary judgment on its breach of contract claim.  On the one hand, the various expert opinions proffered by the parties make sufficiently clear that Plaintiff is unable to prove specific dates in which specific damage to the buildings' exterior occurred.  Travelers' and Country Mutuals' structural engineering experts – Richard Dethlefts and Zachary Stutts, respectively – testified during their depositions that it was impossible to backdate any of the Condominium's damage to

ORDER - 12

specific dates.  *See, e.g.*, Dethlefts Dep. Tr. at 101:7-25; Stutts Dep. Tr. at 37:1-4.  Indeed, Johanson himself conceded that he could not determine with any precision, based on a visual inspection of affected materials, when specific damage occurred.  *See* Johanson Dep. Tr. at 143:22-144:23.

On the other hand, Plaintiff proffers the declaration of its expert, Johanson, who opines, as discussed above, that construction defects in the buildings' exterior cladding permitted water to intrude through its envelope, and "likely caused some new damage each year since soon after original construction, and at least since 1995."  *See* Johanson Decl. ¶ 7.  Defendants' experts dispute that damage would have occurred immediately after the Condominium's construction in 1984.  *See, e.g.*, Dethelfs Dep. Tr. at 101:7-25 ("damage doesn't occur as soon as something is wetted"); Stutts Dep. Tr. at 39:2-9 ("the resultant effects of decay, deterioration, damage don't happen immediately").  Defendants' experts do not, however, dispute that the Condominium could have first suffered weather-related damage as early as 1995 – *i.e.*, when the Travelers' Policies came into effect – and continued to suffer new damage every year since then.  Indeed, Stutts testified that he would expect decay and deterioration to result a few years after construction, and that it was "probable" that such damage was continuing to occur between 2013 and 2020 while the Country Mutual Policies' were in effect.  *See* Stutts Dep. Tr. 38:11-41:1.  Dethlefs, though less helpful to Plaintiff, similarly opined that some amount of damage was "possible" to the portions of the buildings experiencing water intrusion within the first 10 years of construction, and "likely" within the first 15 years of construction.  *See* Dethlefs Dep. Tr. at 102:1-106:7.

While the record certainly does not contain scientifically conclusive evidence of new damage to the Condominium's exterior during the relevant policy periods, Plaintiff has presented sufficient evidence to permit a reasonable juror to find the existence of such damage.  In *Eagle Harbour Condo. Ass'n*, a court in this District was presented with a similar case in which a

ORDER - 13

condominium association sought insurance coverage for weather-related damage to its buildings'
exterior that was revealed decades after the policy period at issue.  2017 WL 1316936.  The court
found, based on expert testimony "that from 1979 to 2014 wind-driven rain and poor construction
allowed water to penetrate [the buildings'] exterior," that there was a genuine issue as to whether
new damage had occurred during the policy period.  *Id.* at *6 ("It is for the jury to decide whether
each storm event operated like a rock hitting and cracking an already cracked windshield, or
whether they had no new effect, and instead the water damage operated like a single crack on a
windshield that simply elongated over time.").  Similarly, in *Sunwood*, another court in this District
found, based on expert opinion that a condominium had continuously suffered new damage from
wind-driven rain since its construction decades before, that "[w]hether the Association [could]
show damage or loss commencing during [the] policy period [was] a question for the jury."  2017
WL 5499809, at *5.  As with those cases, Plaintiff points to expert opinion that, as result of defects
that permitted water intrusion, the Condominium continuously suffered new damage to the
buildings' exterior since its construction.   Whether Plaintiff can prove that such damage
commenced or occurred during the policies' effective periods is a question properly reserved for
the jury.[6]

Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's
breach of contract claim.

---

[6] Travelers suggests that Plaintiff does not demonstrate that the cost of repairing new damage exceeded the applicable
deductible as necessary for coverage under the Travelers Policy.  *See, e.g.*, Tr. Mot. at 11; *see also supra* at 2.  Given
Johanson's opinion that the cost of repairing new damage would have exceeded $1,000 (*see* Johanson Decl. ¶ 7) –
which Travelers does not dispute – the Court finds that Plaintiff has also created a genuine issue as to whether the
applicable deductible had been reached.

ORDER - 14

**B.      Plaintiff's Motion for Partial Summary Judgment**

Plaintiff seeks partial summary judgment on part of its claim for declaratory relief. Specifically, Plaintiff asks this Court to issue four distinct legal rulings concerning the interpretation of two of the Travelers Policies[7] and all of the Country Mutual Policies: (1) the policies "do not exclude, and therefore cover, "weather conditions'"; (2) "the Travelers [P]olicies cover damage caused by the combination of covered and uncovered perils"; (3) "if the jury decides 'negligent work' initiated a chain of causation that includes one or more covered perils (*e.g.*, "weather conditions"), then the Country Mutual Policies cover that loss"; and (4) "if the jury finds that progressive and incremental covered damage was ongoing during Travelers' or Country Mutual's policy periods, then that insurer is jointly and severally liable for all of the damage." *See* Pl. Mot. at 2-3, 19-20.[8]

Defendants argue, as an initial matter, that the Court need not review Plaintiff's claim for declaratory relief or otherwise interpret the insurance policies because Plaintiff "presents no credible evidence that the physical damage occurred at the Condominiums while the Policies were in effect." *See* Travelers Opp. at 6-8. As discussed above, however, Plaintiff has presented such evidence. Moreover, "[i]nterpretation of language in an insurance policy is a question of law" that this Court is capable of reviewing at this stage, and finds will be helpful in focusing the issues for trial. *See Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wash. 2d 501, 512 (Wn. Sup Ct. 2012). Therefore, the Court will proceed to review Plaintiff's claim.

---

[7] The two Travelers Policies at issue in Plaintiff's motion were collectively in effect between February 1995 and February 1997. The Court will continue to refer to those two policies as the "Travelers Policies."

[8] Plaintiff's claim for declaratory relief also seeks an ultimate ruling that the policies "cover the cost of repairing the damage to the Franssen condominium buildings" (SAC ¶ 5.2), however Plaintiff does not request that ruling as part of its motion.

ORDER - 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

       1.      **Whether the Travelers and Country Mutual Policies Cover Weather Conditions**

Plaintiff seeks a ruling that the Travelers Policies and Country Mutual Polices "do not exclude – and therefore cover – 'weather conditions'" at issue in this case.  Relevant here are "weather condition" clauses contained in both policies providing that damage from weather conditions is excluded from coverage only to the extent they relate to specific events not at issue here (*e.g.*, landslides).  *See* Aliberti Decl., Ex. A at 21, 23 (Travelers Policies stating that insurer "will not pay for loss or damage caused by or resulting from … [w]eather conditions.  But this exclusion only applies if weather conditions contribute in any way with," among other things, "earth movement"); Hayes Decl., Ex. C at 42 (Country Mutual Policies, as modified by endorsement, stating that insurer "will not pay for loss or damage caused by or resulting from … [a] weather condition which results in: [] Landslide, mudslide or mudflow…").  In response to Plaintiff's motion, Travelers argues that the "weather conditions" at issue are not necessarily covered because its policies, elsewhere, exclude coverage for "[c]ontinuous or repeated seepage or leakage of water that occurs over a period of 14 days or more."  Aliberti Decl., Ex. A at 23.[9] The Country Mutual Policies, similarly, exclude coverage for "[c]ontinuous or repeated seepage or leakage of water … that occurs over a period of 14 days or more."  Hayes Decl., Ex. C at 53. According to Travelers, given that the policies do not distinguish between "weather-induced" leakage and other types of water leaks, "they expressly exclude coverage for all damage caused by the repeated leakage of water, irrespective of where the water comes from."  Tr. Opp. at 12-16.

---

[9] Country Mutual argues that the Court should decline to review this issue because Plaintiff relies only on "general context" concerning the weather conditions at issue, and that the sought ruling could not narrow the issues for trial "[i]n such a factual vacuum."  *See* Country Mutual Opp. at 7.  At this point, Plaintiff's allegations and coverage theory are sufficiently clear to permit the Court to interpret the relevant policy provisions in the specific context of this case.  Doing so, as stated above, will focus the issues for trial.  *See Overton v. Consol. Ins. Co.*, 145 Wash. 2d 417, 424 (Wn. Sup. Ct. 2002) ("The outcome of this case depends on a proper interpretation of the insurance policies…").

ORDER - 16

1  Travelers' argument lacks merit.  As Plaintiff points out (and Defendants do not dispute),

2 the Travelers Policies and Country Mutual Policies, by affording coverage for all risks of physical

3 loss or damage unless specifically limited or excluded, provide "all-risk" coverage.  *See* Aliberti

4 Decl., Ex. A at 13; Hayes Decl., Ex. C at 47; *see also Vision One*, 174 Wash. 2d at 513 (noting

5 that all-risk policies "provide coverage for all risks unless the specific risk is excluded" (citation

6 omitted)).  All-risk policies are "strictly construed for coverage."  *Eagle Harbour*, 2017 WL

7 1316936, at \*4; *see Vision One*, 174 Wash. 2d at 514 ("All-risk policies generally allocate risk to

8 the insurer.").  Here, the Travelers Policies and Country Mutual Policies expressly exclude a

9 limited set of specifically identified weather conditions, none of which include the weather

10 conditions at issue in this case (*i.e.*, rain and other precipitation).  Consistent with the principle that

11 all-risk policies insure "any peril *that is not specifically excluded*," *Findlay v. United Pac. Ins. Co*.,

12 129 Wash. 2d 368, 378 (Wn. Sup. Ct. 1996) (emphasis in original), those policies – construed in

13 favor of coverage, as the Court must, *see Vision One*, 174 Wash. 2d at 512-13 – indicate coverage

14 for the weather conditions alleged by Plaintiff.  *See Sunbreaker Condo. Ass'n v. Travelers Ins.

15 Co*., 79 Wash. App. 368, 377 (Wn. Ct. App. 1995) ("The weather conditions clause evinces the

16 insurer's intent to accept liability for loss or damage caused by wind-driven rain when the

17 resulting damage is something other tha[n] earth movement, power failure, water damage …");

18 *see also Eagle Harbour*, 2017 WL 1316936, at \*4 (finding that all-risk policy "covers all other

19 weather events").

20  Moreover the policies' "leakage of water" exclusions clearly do not apply to the weather

21 conditions at issue in this case.  In *Sunbreaker*, the court, reviewing near identical exclusion

22 language, found that it did not apply to wind-driven rain because that exclusion "relate[d] to a long

23 term event ("a period of 14 days or more") which is not commonsensically associated with a

ORDER - 17

weather condition." 79 Wash. App. at 377.  The court in *Eagle Harbour*, also reviewing near identical language, similarly found that damage from wind-driven rain, even where not associated with specifically identified storm events, was "a peril distinct from repeated water seepage." 2017 WL 1316936, at *4.  The Court comes to the same conclusion here.  Contrary to Travelers' assertion that the "damage alleged by Plaintiff took place over a period of more than three decades – that is, more than fourteen days" (Tr. Opp. at 16), Plaintiff clearly claims, as did the plaintiffs in *Sunbreaker* and *Eagle Harbour*, that the damage was caused by temporary precipitation.  That type of peril is distinct from, and does not constitute, water seepage or leakage occurring "over a period of 14 days or more."  Therefore, the Court finds that the weather conditions at issue in this case are not excluded from coverage under the Travelers Policies or the Country Mutual Policies.

### 2.     Whether the Travelers Policies Cover Damage Caused by the Combination of Covered and Uncovered Perils

Plaintiff asks this Court for a ruling that the Travelers Policies cover damage caused by a combination of covered and uncovered perils even where the damage resulted from a causal chain set into motion by an excluded peril.  *See* Pl. Mot. 14-19.  Travelers contends that its policies do not permit such coverage because, here, the "damage was predominantly caused by excluded perils": faulty workmanship, inadequate maintenance, water leakage, and decay and deterioration. *See* Tr. Opp. at 20.

Travelers premises its argument on the "efficient proximate cause" rule.  Under that rule, "where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage." *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co*., 515 P.3d 525, 535 (Wn. Sup. Ct. 2022) (quoting *McDonald v. State Farm Fire & Cas. Co*., 119 Wash. 2d 724, 731 (Wn. Sup. Ct. 1992)).  In other words, when covered and

ORDER - 18

excluded perils combine in a causal chain initiated by a covered peril, the rule mandates coverage as long as the "covered peril is the predominant or efficient cause of the loss." *Vision One*, 174 Wash. 2d at 519.  According to Travelers, an extension of the rule is that, where an *excluded* peril initiates a causal chain that includes both covered and excluded perils, there will be no coverage if the excluded peril predominates.  *See* Tr. Opp. at 19-24.  However, as the Washington Supreme Court recently made clear, Travelers' proposed extension – *i.e.*, the efficient proximate cause rule in reverse – "is not a rule of law." *Hill & Stout*, 515 P.3d at 535 (quoting *Vision One*, 174 Wash. 2d at 519).  "When an *excluded peril* sets in motion causal chain that includes covered perils, the efficient proximate cause rule does *not* mandate exclusion of the loss." *Id.* (emphasis in original). "[S]hould an insurer wish to exclude otherwise-covered losses that result from a causal chain set into motion by an excluded peril (*i.e.*, include an inverse EPC-rule provision) the insurer must include specific language in the policy to this effect." *Greenlake Condo. Ass'n v. Allstate Ins. Co.*, No. 14-cv-1860, 2015 WL 11988945, at *10 (W.D. Wash. Dec. 23, 2015); *see Hill & Stout*, 515 P.3d at 535 (recognizing "the possibility that an insurer may draft policy language to deny coverage when an *excluded peril initiates an unbroken causal chain*" (emphasis in original; citation omitted)).

As Plaintiff points out – and Travelers does not dispute – the Travelers Policies do not contain language specifically excluding coverage where damage results from a causal chain initiated by an excluded peril. *See* Pl. Mot. at 18-19.  Therefore, Plaintiff argues, coverage would not be excluded by virtue of the fact that the causal chain resulting in the Condominium's damage was initiated by an excluded peril (*e.g.*, faulty workmanship).  The Court agrees with Plaintiff, and rejects Travelers' argument that coverage is excluded where damage was predominately caused by excluded perils.  As noted above, the efficient proximate cause rule does not apply "[w]hen an

*excluded peril* sets in motion a causal chain that includes covered perils." *Hill & Stout*, 515 P.3d at 535 (emphasis in original). Accordingly, whether or not damage was "predominately" caused by excluded perils is legally of no moment even if one such peril initiated the causal chain. In all events, Travelers cannot wield the efficient proximate cause rule to exclude coverage given that it "operates only in favor of coverage," *Greenlake*, 2015 WL 11988945, at *10; *see Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash. 2d 618, 626 (Wn. Sup. Ct. 1994) ("the efficient proximate cause rule operates in favor of coverage"). Rather, in the absence of any policy language excluding coverage where damage results from a combination of covered peril and uncovered perils, the policies provide coverage. *See Vision One*, 174 Wash. 2d at 509 (approving trial court's jury instruction that "[i]f it is found that the loss was caused by one or more non-excluded event(s) in combination with one or more excluded event(s); the loss is covered"); *Sunwood*, 2017 WL 5499809, at *4 (finding that the absence of a "concurrent cause exclusion … indicates an intent to cover the damage or loss [] if it results from concurrent covered and excluded causes").

At this stage, the Court cannot make a factual determination as to whether the damage to the Condominium was, in fact, caused by a combination of covered and uncovered perils. *See Greenlake*, 2015 WL 11988945, at *8 ("To the extent that Plaintiff seeks summary judgment as to the proximate cause of damage, this question is a question of fact best left to a jury."); *Sunwood*, 2017 WL 5499809, at *4 ("Whether excluded and covered perils were concurrent efficient proximate causes of the Association's loss is a question for the finder of fact."). However, the Court can, and does, find as a matter of law that, if an excluded peril initiated the chain of causation resulting in damage to the Condominium, the Travelers Policies cover that damage as long as Plaintiff can prove that the excluded peril combined with a covered peril in that causal chain.

ORDER - 20

1
2

        **3.**     **Whether the Country Mutual Policies Cover Damage Where "Negligent Work" Initiates a Chain of Causation that Includes a Covered Peril**

3
4
5
6
7
8
9
10
11

Plaintiff seeks a declaration that "if the jury decides 'negligent work' initiated a chain of causation that includes one or more covered perils (*e.g.*, "weather conditions"), then the Country Mutual Policies cover that loss." Pl. Mot. at 19-20. Relevant here is the "negligent work" clause contained in the Country Mutual Policies, which excludes coverage for damage resulting from "[f]aulty, inadequate or defective" materials, maintenance, and other types of work on the buildings.[10] Based on this exclusion, Country Mutual contends that any damage resulting from a chain of causation initiated by negligent work is excluded from coverage by the efficient proximate cause rule.

12
13
14
15
16
17
18
19
20
21
22
23

The parties dispute, as an initial matter, whether the Country Mutual Policies' "negligent work" clause is subject to language excluding coverage where damage ensues from a causal chain initiated by an excluded peril. *See supra* at 18-19. Country Mutual points to a provision in the "Washington Changes" endorsement that adds such language to "any introductory paragraph preceding an exclusion or list of exclusions." *See* Hayes Decl., Ex. C at 41 (excluding coverage where an excluded event "[i]nitiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence"). According to Country Mutual, that language necessarily applies to the "negligent work" clause given that it sets forth an exclusion. *See* Country Mutual Opp. at 7. Plaintiff, on the other hand, points to a separate provision in the endorsement that replaces the entirety of the "negligent work" clause, and in doing

24
25
26

---

[10] Specifically, the Country Mutual Policies exclude damage resulting from "[f]aulty, inadequate or defective: (1) Planning, zoning, development, surveying, siting; (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance." Hayes Decl., Ex. C at 43.

ORDER - 21

1    so, inserts a causation preamble preceding that clause that simply reads: "if an excluded cause of

2    loss … results in a Covered Cause of Loss, we will pay for the loss or damage caused by that

3    Covered Cause of Loss." *See* Hayes Decl., Ex. C at 42-43. That more specific provision, Plaintiff

4    argues, indicates that the negligent work clause is not subject to language excluding coverage for

5    damage resulting from a causal chain initiated by an excluded peril. *See* Pl. Rep. at 11-12.

6          Given these seemingly conflicting provisions, it is ambiguous whether the Country Mutual

7    Policies contain language specifically excluding coverage for damage resulting from a chain of

8    causation initiated by negligent work. The Washington Supreme Court has repeatedly recognized

9    that if the interpretation of an insurance policy is "fairly susceptible of two different conclusions,

10    the one will be adopted most favorable to the insured." *McLaughlin v. Travelers Com. Ins. Co*.,

11    196 Wash. 2d 631, 643 (Wn. Sup. Ct. 2020) (quoting *Jack v. Standard Marine Ins. Co*., 33 Wash.

12    2d 265, 271 (Wn. Sup. Ct. 1949)). Where exclusions are concerned, as is the case here, the

13    principle of resolving ambiguities in the insured's favor "applies with added force." *Queen City*

14    *Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 126 Wash. 2d 50, 83 (Wn. Sup. Ct. 1994). Therefore,

15    consistent with this well-established principle, the Court finds that the Country Mutual Policies do

16    not contain such language.

17          The Court, accordingly, finds that the Country Mutual Policies do not exclude coverage

18    for damage resulting from a chain of causation initiated by negligent work. As discussed above,

19    "[w]hen an *excluded peril* sets in motion a causal chain that includes covered perils, the efficient

20    proximate cause rule does *not* mandate exclusion of the loss." *Hill & Stout*, 515 P.3d at 535

21    (emphasis in original). Given that negligent work is an excluded peril, the damage resulting from

22    a causal chain initiated by negligent work would only be excluded if the policy had contained

23    language specifically requiring such exclusion. *See id.* It does not. Accordingly, the Court hereby

ORDER - 22

rules that if the jury determines that damage resulted from a causal chain that was initiated by negligent work and includes one or more covered perils (*e.g.*, covered "weather conditions"), then the Country Mutual Policies cover that damage.

4.      **Whether Travelers and Country Mutual Would Be Liable for All Progressive and Incremental Damage that was Ongoing During their Policy Periods**

Under the so-called "continuous trigger" rule, "progressive or incremental damage … is treated as a single, continuing 'occurrence' for liability purposes." *Sunwood*, 2017 WL 5499809, at *5 (citation and quotation marks omitted). "Once coverage is triggered in one or more policy periods, those policies provide full coverage for all continuing damage, without any allocation between insurer and insured." *Eagle Harbour*, 2017 WL 1316936, at *7 ("all triggered policies provide full coverage") (quoting *Travelers Prop. Cas. Co. of America v. AF Evans Co.*, No. 10-cv-1110, 2012 WL 12882902, at *3 (W.D. Wash. 2012). "Thus, insurers who provide insurance during the period in which there is damage are jointly and severally liable for the total damage." *Greenlake*, 2015 WL 11988945, at *12; *see Eagle Harbour*, 2017 WL 1316936, at *7 ("Each insurer of a risk during a time of ongoing damage has a joint and several obligation to provide coverage for that damage." (citations omitted)).

Plaintiff seeks a ruling that "if the jury decides the [C]ondominium is suffering from progressive and incremental damage that was ongoing during Travelers' or Country Mutual's policy periods, then that insurer is jointly and severally liable for all of the damage." Pl. Mot. at 20-21. In opposing that request, Country Mutual argues that Plaintiff fails to show that any damage resulting from a covered peril commenced during any of its policy periods. *See* Country Mutual Opp. at 11. Country Mutual's argument lacks merit. Plaintiff's motion does not ask the Court to determine as a factual matter whether new damage commenced during the relevant policy periods,

ORDER - 23

but only to determine whether, as a matter of law, Defendants would be jointly and severally liable for such damage if proven.[11]

Travelers, for its part, argues that joint and several liability is imposed on insurers only where "the applicable policies defined the term 'occurrence' to include 'continuous or repeated exposure' to the same harmful conditions." Tr. Opp. at 24. While Travelers cites a handful of cases in which insurance policies had so defined the term "occurrence," *see, e.g.*, *Certain Underwriters at Lloyd's London v. Valiant Ins. Co.*, 155 Wash. App. 469, 474 (Wn. Ct. App. 2010), Travelers cites no authority supporting its argument that joint and several liability is dependent on such language.[12] Indeed, several courts in this District have applied the continuous trigger rule in its absence. *See, e.g.*, *Eagle Harbour*, 2017 WL 1316936, at *7 (insurer would be "jointly and severally liable for the Association's continuing damage" if a jury concludes that progressive damage from wind-driven rain occurred during its policy period); *see also Sunwood*, 2017 WL 5499809, at *6 (citing cases that "have applied the continuous trigger rule to policies with a commencing condition").

As in *Eagle Harbour* and *Sunwood*, Plaintiff seeks to prove incremental and progressive damage resulting from weather conditions that occurred across and during each of Defendants' policy periods. Consistent with those courts and pursuant to the continuous trigger rule, the Court rules that, in the event the jury determines that the Condominium suffered progressive and

---

[11] Country Mutual also asserts that the meaning of "progressive and incremental damage" is "less than clear." Country Mutual Opp. at 11. However, that concept is well described by the relevant case law and should be of no mystery to the parties. *See, e.g.*, *Sunwood*, 2017 WL 5499809, at *6.

[12] Travelers also contends that the Washington Court of Appeals held, in *Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wash. App. 597 (Wn. Ct. App. 2000), that the "continuous trigger rule" does not apply to policies like the Travelers Policies that exclude coverage for long-term progressive damage (*e.g.*, decay). Tr. Opp. at 25. Travelers misreads that decision. In *Mercer*, the court held only that the policy did not provide coverage for covered damage occurring *after* the policy period – there, the collapse of a building – where only uncovered "precursors of collapse" (*e.g.*, dry rot) occurred during the period. *Mercer*, 104 Wash. App. at 605. That does not apply here, where Plaintiff claims that covered damage – *i.e.*, from weather conditions – occurred *during* the policy periods at issue.

ORDER - 24

incremental weather-related damage that was ongoing during Travelers' and Country Mutual's policy periods, they will be jointly and severally liable for all of that damage. "It is then for the Defendants to sort liability amongst themselves." *Eagle Harbour*, 2017 WL 1316936, at *7.

Accordingly, the Court grants Plaintiff's motion for partial summary judgment. The Court hereby rules as follows:

1. The weather conditions at issue in this case are not excluded from coverage under the Travelers Policies or the Country Mutual Policies.

2. If the jury determines that the damage to the Condominium resulted from a chain of causation that was initiated by an excluded peril and that includes one or more covered perils, then the Travelers Policies and the Country Mutual Policies cover that damage.

3. If the jury decides that the Condominium suffered progressive and incremental weather-related damage that was ongoing during Travelers' or Country Mutual's policy periods, then they will be jointly and liable for all of that damage.

## V.   <u>CONCLUSION</u>

NOW, THEREFORE, the Court rules as follows:

1. The Court GRANTS Plaintiff's motion for partial summary judgment on part of its claim for declaratory relief (Dkt. 44). The Court interprets the Travelers Policies and the Country Mutual Policies as stated above.

2. The Court DENIES Travelers' motion for partial summary judgment on Plaintiff's claim for breach of contract (Dkt. 62).

3. The Court DENIES Country Mutual's motion for partial summary judgment on Plaintiff's claim for breach of contract (Dkt. 64).

ORDER - 25

4.  The Court DENIES Travelers' motion to exclude the testimony of Jens Johanson

(Dkt. 69).

SO ORDERED.

Dated:  October 18, 2022

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 26