UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANSSEN CONDOMINIUM ASSOCIATION OF APARTMENT OWNERS,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>COUNTRY MUTUAL INSURANCE COMPANY, FARMINGTON CASUALTY COMPANY, THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, and TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>　　　　　　　　　Defendants. | No. 2:21-cv-00295-BJR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A PARTIAL NEW TRIAL |

## I.   **INTRODUCTION**

This lawsuit is an insurance coverage dispute relating to alleged weather-related damage suffered by a condominium in Oak Harbor, Washington (the "Condominium"). Following a five-day jury trial that commenced on December 5, 2022, the jury reached a verdict in favor of Defendants Farmington Casualty Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, and The Travelers Casualty Insurance Company of America (collectively, "Defendants" or "Travelers"). Presently before the Court is a motion for a partial

ORDER - 1

new trial filed by Plaintiff Franssen Condominium Association of Apartment Owners ("Plaintiff" or the "Association"). Dkt. 121 ("Mot."). Having reviewed the motion, the record of the case, and the relevant legal authorities, the Court DENIES the motion.

## II.     BACKGROUND

In March 2020, Travelers denied a property insurance claim submitted by the Association concerning certain weather-related damage to the Condominium's exterior. Plaintiff filed this lawsuit to recover the roughly $2.3 million in alleged repair costs that Plaintiff claimed was covered under the insurance policies it had purchased from Travelers (the "Travelers Policies"). On December 5, 2022, a jury trial commenced on Plaintiff's claims against Defendants for breach of contract, insurance bad faith, and violations of the Insurance Fair Conduct Act ("IFCA") and the Consumer Protection Act ("CPA"). Each of those claims were premised on Plaintiff's allegation that the Condominium's damage was covered under the Travelers Policies, which were collectively in effect from February 1995 to 1997.

At trial, Travelers maintained its position – previously set forth in its letter to the Association denying coverage – that the Condominium's damage was not covered under the Travelers Policies on the ground that it was caused solely by excluded perils. Travelers also argued, among other defenses, that it was not liable as to any of Plaintiff's claims on account of the Association's failure to give Travelers prompt notice of the Association's loss in accordance with the policies' prompt-notice provisions (*i.e.*, the "late notice" defense). In the Court's instruction to the jury on the late notice defense, the Court stated, in relevant part:

> To establish this defense, Travelers has the burden to prove, by a preponderance of the evidence, first, that the Association failed to provide prompt notice of its loss; and second, that Travelers suffered actual and substantial prejudice as a result.
>
> To establish that it suffered actual and substantial prejudice, Travelers must provide evidence of a concrete detriment, resulting from the delay in notice, together with some specific harm that Travelers suffered as a result.

ORDER - 2

Dkt. 122-1 ("Trial Tr.") at 546-47.

Following a five-day trial, the jury found that while the Condominium's damage was covered under the Travelers Policies, Travelers had established the late notice defense. Specifically, as is reflected in the completed jury verdict form, the jury found that (1) the Association failed to give prompt notice of the Condominium's damage to Travelers, and (2) Travelers suffered actual and substantial prejudice because of the Association's failure. Dkt. 112 at 2. In light of that finding, the jury rendered a verdict in favor of Defendants on all of Plaintiff's claims, and judgment was granted to Defendants.[1]

On January 19, 2023, Plaintiff filed the present motion, seeking a partial new trial on the issues and claims the jury did not reach on account of its finding as to the late notice defense. *See supra* at n.1. Defendants filed an opposition ("Opp.," Dkt. 125), and Plaintiff replied ("Rep.," Dkt. 129).

### III.   LEGAL STANDARD

Under Rule 59, "[t]he court may, on motion, grant a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Given that the rule "does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Such grounds "include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to

---

[1] Given the jury's finding as to the late notice defense, it was not necessary for the jury to make any further findings concerning certain other defenses Travelers invoked at trial or Plaintiff's claims for insurance bad faith or violations of the CPA and IFCA.

ORDER - 3

the party moving.'"  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

## IV. DISCUSSION

Plaintiff's motion pertains to the jury's finding that Travelers was entitled to invoke the late notice defense, thereby absolving Defendants of any liability.  Plaintiff does not challenge the jury's finding that the Association failed to provide prompt notice of the Condominium's damage, as required by the Travelers Policies' notice provisions.  Rather, Plaintiff contends that its late notice legally could not have prejudiced Travelers because Travelers had independently determined that the type of damage suffered by the Condominium was excluded under the Travelers Policies.  According to Plaintiff, "Travelers could not have suffered prejudice from the timing of the Association's notice because no matter when it received notice, it would have denied that the loss was covered."  Mot. at 8-9.  Plaintiff's argument lacks merit.

As an initial matter, to the extent Plaintiff contends that the Court erred in including the late notice defense in its jury instructions and the verdict sheet, any such error would have been invited by Plaintiff.  "The doctrine of invited error prevents a defendant from complaining of an error that was his own fault."  *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992).  In accordance with that doctrine, the Ninth Circuit has long held that a litigant waives any challenge to a jury instruction where the litigant itself had proposed the challenged instruction. *See United States v. Baldwin*, 987 F.2d 1432, 1437 (9th Cir. 1993) ("Where the defendant himself proposes the jury instruction he later challenges on appeal, we deny review under the invited error doctrine."); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1493 (9th Cir. 1986) ("A party who requests an instruction invites any error contained therein and, absent an objection before the instruction is given, waives appellate review of the correctness of the instruction.").  Likewise,

ORDER - 4

district courts regularly reject litigants' requests for new trials, made on the ground that erroneous instructions were provided to the jury, where the challenged instructions were supplied by the litigants themselves. *See, e.g.*, *Ironburg Inventions Ltd. v. Valve Corp.*, No. 17-cv-1182, 2021 WL 2137868, at *12 (W.D. Wash. May 26, 2021) (defendant's objection to jury instruction it had provided the court "involve[d] defendant's invited error, on which it may not now rely in seeking a new trial"); *IDS Prop. and Casualty Ins. Co. v. Fellows*, No. 15-cv-2031, 2017 WL 2600186, at *5 (W.D. Wash. June 15, 2017) (plaintiff was "precluded by the invited error doctrine" from seeking a new trial on the ground that a jury instruction it had provided the court was erroneous).

In the parties' joint pre-trial statement, Plaintiff proposed – separately from Defendants – a jury instruction on the late notice defense (Jury Instruction No. 23). Plaintiff's proposed instruction provided, in relevant part:

> To establish this defense, Travelers has the burden to prove by a preponderance of the evidence:
>  1. that the Association failed to provide prompt notice of its loss; and
>  2. that Travelers suffered actual and substantial prejudice as a result.
>
> To establish that it suffered actual and substantial prejudice, Travelers must provide evidence of a concrete detriment resulting from the delay in notice, together with some specific harm that Travelers suffered as a result.

Dkt. 84-3 at 61. As set forth above, the Court used nearly identical language in its instruction to the jury. *See* Trial Tr. at 546-47. In addition, in Plaintiff's proposed verdict form – again, offered separately from Defendants – Plaintiff included a question about the late notice defense. Specifically, Question 4 of that form asked: "Did the Association fail to give notice of its claim as soon as practicable, causing substantial prejudice to Travelers?" Dkt. 101 at 3. At no point did Plaintiff object, or otherwise take exception, to the Court's instruction on the late notice defense

ORDER - 5

or its inclusion of a question on that defense in the verdict form.[2] Plaintiff, which was aware of Travelers' coverage position from the beginning of this lawsuit – a fact that both parties' counsel acknowledged in their opening statements (*see* Trial Tr. at 133-34, 149-50) and to which Travelers' claims adjuster testified (*see id*. at 434) – proceeded on the understanding that the issue of prejudice was for the jury to decide. As such, even if it was erroneous to permit the jury to find that Travelers' suffered prejudice given its coverage determination, Plaintiff would have invited that error. Under these circumstances, Plaintiff's request for a new trial based on court error would be procedurally improper.

Moreover, Plaintiff's argument that Travelers' coverage determination precludes it from demonstrating prejudice lacks merit. Plaintiff's motion appears to assume, incorrectly, that the only possible form of prejudice an insurer can suffer is a compromised ability to determine whether a loss is covered or excluded under its policy. *See* Mot. at 9 ("when Travelers received notice … could not have logically affected Travelers' ability to assert its coverage position"). That is inconsistent with the "flexible formulation of the rule for prejudice" that exists under Washington law. *See Mutual of Enumclaw Ins. Co. v. USF Ins. Co*., 164 Wash. 2d 411, 429-30 (2008) ("The rule will manifest itself differently depending on the kind of prejudice an insurer claims."). As Plaintiff concedes in its reply, a coverage-denying insurer may suffer prejudice if the insured's late notice deprived the insurer of an opportunity to minimize the amount of damage otherwise covered. *See* Rep. at 1; *see also*, *e.g*., *Westridge Townhomes Owners Ass'n v. Great Am. Assurance Co*., No. 16-cv-1011, 2017 WL 4957634, at *5 (W.D. Wash. Oct. 31, 2017) (denying insured's

---

[2] Indeed, after Defendants called their last witness, when the parties stated their exceptions to the jury instructions and verdict sheet proposed by the Court, Plaintiff lodged a different objection concerning the late notice defense (*i.e.*, arguing that Defendants' establishment of that defense would not preclude Plaintiff's bad-faith and CPA claims). *See* Trial Tr. at 533-534. Plaintiff, however, did not raise the issue it now raises in its motion.

ORDER - 6

summary judgment motion on late notice defense because it was possible "that a multi-year delay in repair could lead to an increased bill").

The Court finds that sufficient evidence was presented at trial from which a jury could find that Travelers suffered that type of prejudice – *i.e.*, a lost ability to minimize damage. At trial, the Association's board president, William Hawkins, testified, based on his review of contemporaneous documents shown to the jury, that the Association had been notified in 1997 about ongoing water leaks in the Condominium's siding. Trial Tr. at 199-203. The jury also heard testimony from Plaintiff's own expert, Jens Johanson, that the Condominium's exterior had suffered "incremental and progressive" damage – as caused by rainwater entering the Condominium's exterior through hole-like defects – continuously from the original construction in 1984 through the Association's submission of its insurance claim. *Id.* at 266-68, 312-16. Further, according to Mr. Johanson, the severity of that damage worsened over time commensurate with the aging of the building's envelope. *Id.* at 330. As such, the jury was presented with evidence that the Condominium's damage worsened – and even accelerated – during the 22 years between the time the Association learned of weather-related damage and the time the Association submitted its insurance claim concerning that damage.

Confronted with this evidence, Plaintiff argues in its reply that, absent evidence of a specific cost of repairing the Condominium's damage in 1997, any inference by the jury that the cost of repair had thereafter increased would be speculative. Rep. at 5-6. The Court finds this argument to be unpersuasive. Given the long passage of time before the Association finally submitted its insurance claim in 2019, the parties were faced with a dearth of information about the state of the Condominium's exterior in 1997. Indeed, Mr. Hawkins testified that very few documents from the mid-1990s relating to the building's condition existed by the time the

ORDER - 7

Association submitted its claim. *See* Trial Tr. at 197-99. Under these circumstances – brought about by the Association's late notice – it would be unreasonable to dismiss the jury's finding as speculation for not being based on a specific cost of repair from over two decades ago. Moreover, "[i]t is not the courts' place to substitute our evaluations for those of the jurors." *Union Oil Co. of California v. Terrible Herbst, Inc*., 331 F.3d 735, 743 (9th Cir. 2003). The Court will not do so here. Accordingly, based on the evidence presented at trial, the Court finds that the jury was appropriately capable of finding that the Association's late notice caused Travelers actual and substantial prejudice by depriving it of the ability to minimize the cost of repairing the Condominium's damage.

Prejudice can also take the form of a compromised ability "to put forth defenses to coverage." *Mutual of Enumclaw*, 164 Wash. 2d at 40-431. One such defense Travelers attempted to establish at trial – separate from its argument that the loss was excluded under its policies – was that no new damage to the Condominium had occurred when the Travelers Policies were in effect (*i.e.*, between 1995 and 1997).[3] The Court finds that the jury was presented with evidence that the Association's late notice hindered Travelers' ability to mount that defense. Travelers' claims adjuster, Dean Aliberi, testified that, due to the long passage of time, Travelers was unable to determine through its investigation whether any damage had occurred during that period. *See* Trial Tr. at 434-35 ("it really was impossible to determine when particular damage may have occurred"). Mr. Aliberti's testimony was buttressed not only by Mr. Johanson's testimony that the Condominium's exterior progressively changed over time, but also by Mr. Hawkins' testimony as

---

[3] As the Court explained in resolving the parties' summary judgment motions, to trigger coverage under the Travelers Policies, Plaintiff was required to demonstrate that water intrusion caused new damage to the Condominium during the policy periods. *See* Dkt. 77 at 11-12.

ORDER - 8

to the lack of documents bearing on the Condominium's condition in the mid-1990s.[4]  *See supra* at 7-8.  This evidence was sufficient to support a finding that Travelers, faced with significant challenges in investigating the damage suffered by the Condominium in prior decades, was prejudiced through a lost ability to argue at trial that no new damage had occurred within the policy periods.[5]  *See, e.g.*, *First Nat. Ins. Co. of Am. v. Decoursey*, 174 Wash. App. 1052 (Wn. Ct. App. 2013) (insurer established late notice defense because "as a result of the late notice, [insurer] could not … investigate and develop its own coverage defenses"); *see also Felice v. St. Paul Fire & Marine Ins. Co.*, 42 Wash. App. 352, 360 (Wn. Ct. App. 1985) (late notice prejudiced insurer because "it was precluded from investigating and evaluating" plaintiff's claim).  Given that this argument is separate and distinct from the defense as to policy coverage, Travelers' coverage determination would not preclude the jury from finding that Travelers suffered prejudice through a compromised ability to put forth this separate defense to coverage.

Accordingly, the Court finds that the jury was presented with sufficient evidence from which it could find that the Association's late notice caused Travelers actual and substantial prejudice, and that such finding is not precluded by Travelers' coverage determination.  Moreover, insofar as Plaintiff's request for a new trial is based on an asserted court error, that request would be procedurally improper.  The Court, therefore, will not grant Plaintiff's motion.

---

[4] Mr. Hawkins further testified that he had moved to the Condominium only in 2019, and those who were on the board in the mid-1990s could not assist Travelers in its investigation because they had moved away, passed away, or had dementia.  *See* Trial Tr. at 190-97.

[5] Plaintiff cites to *Canron, Inc. v. Fed. Ins. Co.*, 82 Wash. App. 480 (Wn. Ct. App. 1996), wherein the court found that a claims adjuster's testimony – which consisted of a "bare allegation that [the insurer's] ability to investigate was compromised – was, on its own, insufficient to support the jury's finding of prejudice.  *Id.* at 486-92.  Plaintiff argues that under *Canron*, Mr. Aliberti's testimony is insufficient evidence of prejudice.  Rep. at 3-5.  However, in *Canron*, "no evidence was introduced" as to any specific investigation difficulties posed by the one-year delay.  *Id.* at 489.  Here, on the other hand, the jury was presented with evidence that the Condominium's exterior deteriorated, and documents and witnesses that could have otherwise assisted in the investigation became unavailable, over the course of an over 20-year delay.  Thus, unlike in *Canron*, Mr. Aliberti's testimony was not the sole evidence of this prejudice.

ORDER - 9

### V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for a partial new trial. Dkt. 121.

SO ORDERED.

Dated: February 27, 2022

                                                Barbara Jacobs Rothstein
                                                U.S. District Court Judge

ORDER - 10